# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

TRACY PARKER,

        **Plaintiff,**

    **v.**
                            **Case No. 2:17-cv-541**
                                   **JUDGE GEORGE C. SMITH**
                                   **Magistrate Judge Jolson**

STRAWSER CONSTRUCTION, INC.,
*et al.,*

        **Defendants.**


## OPINION AND ORDER

This action arises out of Plaintiff Tracy Parker's claims of sex and disability discrimination, harassment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"), and Chapter 4112 of the Ohio Revised Code ("Chapter 4112") against her former employer, Defendant Strawser Construction, Inc., and four individual employees of Strawser. All five defendants filed separate Motions to Dismiss Parker's Amended Complaint (Docs. 18–22). Parker also moved to strike portions of Defendants' reply briefs, or in the alternative, for leave to file a sur-reply ("Parker's Motion to Strike"). (Doc. 36). The motions are fully briefed and ripe for disposition. For the following reasons, each of the individual defendants' Motions to Dismiss is **GRANTED**; Strawser's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**, and Parker's Motion to Strike is **DENIED AS MOOT**.

# I. BACKGROUND

## A. Parker discloses her transgender status and is harassed by co-workers.

Parker began working for Strawser as a truck driver in 2009. (Doc. 10, Am. Compl. ¶ 34). In 2012, Strawser promoted Parker to line truck driver. (*Id.* ¶ 37). Shortly thereafter, Parker began transitioning her gender from male to female. (*Id.* ¶¶ 39–40). Although born male, Parker identifies as transgender and was diagnosed by her physician with gender dysphoria in September 2012. (*Id.* ¶¶ 21–23, 29).

Parker disclosed her gender dysphoria diagnosis and her gender transition to Strawser in September 2012. (*Id.* ¶ 41). When Parker made this disclosure to her immediate supervisor, Dale Ernst, he stated, "you had better be ready to be picked on." (*Id.* ¶ 42). Following this disclosure, Ernst began "writing up Parker for allegedly not executing her job duties or for non-existent/minor errors as evidence" (*e.g.*, errors in her log book), which had not occurred prior to the disclosure. (*Id.* ¶¶ 47, 49). Other, non-transgender employees were not written up for similar minor or unsubstantiated errors. (*Id.* ¶ 48).

Parker was also subjected to "constant and continuing harassment" due to her transgender and transitioning status from her co-workers, in particular, Floyd Kelly and Brian Tucker. (*Id.* ¶¶ 56–57). Kelly made "repeated derogatory and discriminatory gender, gender identity, and transition comments and jokes" and stated to Parker on multiple occasions that "Kelly believed that Parker was really a male, who was attracted to other males." (*Id.* ¶¶ 58–59). Kelly and Tucker would make comments such as "[Parker's] performance was typical 'because you [Parker] drive like a woman," and "we have to be really careful of what we say around him," and would purposely misgender Parker (by referring to her with male pronouns). (*Id.* ¶¶ 60–62).

As part of her job duties, Parker was assigned to share a hotel room with a male co-worker, Ralph Holsinger, in September 2012. (*Id.* ¶ 64). Kelly made comments stating that

Parker and Holsinger were having a sexual relationship and stated to Holsinger that Holsinger was a homosexual due to the rooming arrangements. (*Id.* ¶ 64–65). Parker complained to Ernst regarding Kelly's comments, which Parker felt constituted sexual harassment. (*Id.* ¶¶ 66–67). Directly following Parker's complaint, Kelly's harassment of Parker intensified, and the two ended up in a physical altercation as a result of the harassment. (*Id.* ¶¶ 68, 71). Only Parker received a negative year-end performance review from Ernst, despite being the target of harassment. (*Id.* ¶¶ 72–74).

The harassment continued in 2013. During one of Parker's work-related hotel stays, Kelly disclosed to the hotel staff that Parker was transgender, and a hotel staff member "called Parker to the front desk, simply to see what she looked like." (*Id.* ¶¶ 76–79). On another occasion, Parker walked into a hotel lobby wearing traditionally female clothing, and Kelly stated, "I wish you wouldn't do that because you are making us look bad." (*Id.* ¶ 80). Kelly further stated on other occasions, "can't you just dress like a man?" and "you make for an ugly woman." (*Id.* ¶¶ 81–82).

## B.    Parker's therapist requests accommodations from Strawser on Parker's behalf.

In April 2013, Parker's therapist, Dr. Frederick Peterson, wrote a letter to Freda Grote, Strawser's Human Resources Manager, informing Grote of Parker's gender dysphoria and requesting that Strawser accommodate Parker by allowing her to use female restrooms, and to refer to her using the female gender terminology. (*Id.* ¶¶ 84–87). Grote told Parker that she could only make such accommodations if Parker provided documentation showing that everything was "legal," but did not explain what she meant by "legal." (*Id.* ¶¶ 88–89).

At about the same time in April 2013, Parker also disclosed to Grote that Parker would soon begin taking medication (such as hormone treatments) to help her transition her physical gender, and asked whether Parker's medical insurance would cover sex reassignment surgery.

(*Id.* ¶¶ 90–93).  Grote denied Parker's inquiry, without looking into whether Strawser's medical insurance would cover such a surgery.  (*Id.* ¶ 95).

## C.      Parker is sexually assaulted by a co-worker.

In July 2013, Parker was sexually harassed and sexually assaulted by a co-worker, Terry Jordan.  Parker reported the assault and Strawser immediately terminated Jordan, but other co-workers blamed and harassed Parker for Jordan's termination.  (*Id.* ¶¶ 99–102).  On the same day Jordan was terminated, Strawser moved Parker's work station to the workshop, which was viewed by Strawser employees as a form of punishment. (*Id.* ¶¶ 103–104).  Further, following Jordan's termination, Ernst would "scream at Parker on occasion" and "stated that he would treat Parker better if she performed sexual favors."  (*Id.* ¶¶ 106–07).   Parker did not solicit any such sexual conduct or activity from Ernst, and asked that he not make such requests.  (*Id.* ¶ 108).

## D.      La Joye asks Parker to resign.

In spring of 2014, Parker contacted her superintendent, Ben La Joye, and asked if there was anything he could do to curb the harassment.  (*Id.* ¶¶ 114–16).  La Joye said there was nothing he could do, and declined her request to rearrange the crew to ensure Parker would no longer have to work with Kelly or Tucker.  (*Id.* ¶¶ 117–18).  La Joye told her that "if she was not tough enough to handle the harassment, she was not tough enough to work in construction," and instructed Parker to text him stating that she was resigning.  (*Id.* ¶¶ 119–121).

As instructed, Parker texted her resignation to La Joye, and also sent a message to human resources stating that if Strawser could not remedy the constant sexual harassment, Parker would have to resign.  (*Id.* ¶¶ 122–123).  Grote called Parker and asked her to withdraw her resignation and engage in a discussion with La Joye, Grote, and Chris Anspaugh (president of Strawser). (*Id.* ¶ 124).  This meeting was held in May 2014, at which Parker was told that "accommodating transgender employees was a 'work in progress' at Strawser, and that they would attempt to

remedy the harassment." (*Id.* ¶ 125–127). Despite this assertion, Strawser did not take any meaningful measures to end the harassment. (*Id.* ¶ 128).

### E. Parker is demoted and replaced by Kelly.

In June or July 2014, Strawser demoted Parker from her line truck driver position, resulting in a pay cut of approximately $3.00/hour. (*Id.* ¶¶ 129–30). Strawser placed Kelly in the line truck driver position that Parker previously held, for which Parker alleges Kelly was unqualified. (*Id.* ¶¶ 131–33). The demotion came two to three months after Parker made protected complaints concerning sexual harassment during her meeting with Grote, La Joye, and Anspaugh. (*Id.* ¶ 133).

Parker complained about her demotion to Ernst and Grote and stated that she believed Kelly had been treated more favorably due to Parker's gender, disability, and protected complaints, because Parker was more qualified than Kelly. (*Id.* ¶¶ 134–36). Parker also sent text messages to Grote and La Joye stating she would not "stand for" unfair treatment, in reference to her demotion. (*Id.* ¶ 139). Two to three weeks after Parker's demotion, Parker was suspended without pay for sending these texts, which Strawser perceived as threatening. (*Id.* ¶¶ 137–41). Strawser also instructed Parker to see a Strawser-approved therapist, or else she would be terminated. (*Id.* ¶ 142). Although no other Strawser employees had ever been required to see a therapist, Parker complied and was permitted to return to work. (*Id.* ¶¶ 143–46). Parker continued to be harassed upon her return. (*Id.* ¶ 147).

In late August or early September 2014, Ernst screamed and cursed at Parker for making an incorrect entry in her log book (which he did not do with other employees), and later screamed and cursed at Parker again, accusing her of making up her discrimination complaints. (*Id.* ¶¶ 148–154). Later, Parker sent Ernst a text message asking him to refrain from cursing and yelling at her for minor mistakes. Ernst called Parker in response and told her "be a man" and

"act like a man." (*Id.* ¶¶ 151–152). Parker complained to La Joye about Ernst's conduct, but Ernst received no discipline. (*Id.* ¶¶ 155–56).

## F. Parker is terminated for insubordination.

On October 19, 2014, Michael Zamborski, a project manager for Strawser, instructed Parker to move a loader truck. Parker refused because per Department of Transportation regulations, she would be unable to move the truck without triggering a ten-hour break period as she had already worked a full day. (*Id.* ¶¶ 158–162). Strawser then terminated Parker's employment for insubordination. (*Id.* ¶ 163). Strawser's termination letter addressed Parker as "Mr. Parker," which Parker felt constituted sexual harassment. (*Id.* ¶ 164, 167).

## G. Parker files a charge of discrimination with the EEOC.

Following her termination, Parker filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging "discrimination on the basis of sex, disability, and retaliation when [Strawser] subjected her to less favorable terms and conditions of employment, harassment, demotion, and termination." (Doc. 10-2, EEOC Determination Letter at 1). On March 28, 2017, the EEOC issued Parker a determination letter, finding "that the evidence substantiates that [Parker] was harassed on the basis of sex, in violation of Title VII. However, the [EEOC was] unable to conclude that she was sexually harassed, retaliated against, demoted or discharged. The [EEOC] makes no finding regarding the allegation of disability discrimination." (*Id.*) Parker received a right to sue letter from the EEOC on April 12, 2017. (Doc. 10-1, Right to Sue Letter).

Parker commenced this action on June 21, 2017, asserting eight counts of discrimination, harassment, and retaliation on the basis of sex under Title VII, disability discrimination under the ADA, and corresponding state law claims under Ohio Revised Code Chapter 4112. (Doc. 1, Compl.). She later amended her Complaint on July 17, 2017, to correct an error in Defendant

Chris Anspaugh's name. (Doc. 10). All five defendants now move separately[1] to dismiss Parker's Amended Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## II.        STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ. P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes,*

---

[1] The Court asks that going forward, the five defendants (who are all represented by the same counsel) consider filing consolidated documents rather than five separate briefs that are largely duplicative of each other, as they have done with these motions.

*Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III.    DISCUSSION

Parker asserts eight claims in her complaint: four against Strawser only (Title VII gender discrimination, Title VII sexual harassment, Title VII retaliation, and ADA disability discrimination) and four against Strawser and all four individual defendants (Chapter 4112 gender discrimination, Chapter 4112 sexual harassment, Chapter 4112 retaliation, and Chapter 4112 disability discrimination). The Court will first consider whether Chapter 4112 imposes individual liability on supervisors and managers like Ernst, Grote, La Joye, and Anspaugh, and then consider whether Parker's gender dysphoria and transgender status qualify her as a member of a protected class under the ADA and Title VII.

**A.    The individual defendants are not liable under Chapter 4112.**

**1.    The individual defendants are not "employers" for purposes of Parker's discrimination and harassment claims under § 4112.02(A).**

Defendants argue that Ernst, Grote, La Joye, and Anspaugh are not proper defendants in this action because Chapter 4112 does not impose individual liability on managers and supervisors. Parker argues that each of the individual defendants is subject to liability because R.C. § 4112.02(A) prohibits discrimination by "employers," and the definition of "employer" in Chapter 4112 extends to "any person acting directly or indirectly in the interest of an employer." R.C. 4112.01(A)(2). This stands in contrast to the definition of "employer" under Title VII and the ADA, which extends to "any agent of [an employer]," and which courts have consistently held does not impose liability on individuals. 42 U.S.C. §§ 2000e(b), 12111(5)(a); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997).

Ohio courts have been less than clear on the existence of individual liability under Chapter 4112. In *Genaro v. Cent. Transp., Inc.*, the Ohio Supreme Court held that Chapter 4112's definition of "employer" is "much broader in scope than that employed in the analogous Title VII provision," and "by its very terms, encompasses individual supervisors and managers whose conduct violates the provisions of R.C. Chapter 4112." 84 Ohio St. 3d 293, 296, 299, 1999-Ohio-353, 703 N.E.2d 782. Accordingly, the *Genaro* court decided that "supervisors and managers [may] be held personally liable for unlawful discriminatory acts committed by such persons in violation of R.C. Chapter 4112." *Id.* at 296.

More recently, however, the Ohio Supreme Court determined that Chapter 4112 does not "expressly impose civil liability on political-subdivision employees" so as to exempt them from sovereign immunity. *Hauser v. Dayton Police Dep't*, 140 Ohio St. 3d 268, 2014-Ohio-3636, 17 N.E.3d 554, ¶ 15. In reaching this result, the *Hauser* court seemingly rejected the reasoning of *Genaro*, emphasizing that the purpose of the legislature in enacting Chapter 4112 was to prevent discrimination by *employers*, and stating that "[t]here is no material difference between R.C. 4112.01(A)(2)'s use of the phrase 'person acting * * * in the interest of an employer' and Title VII's use of the phrase 'agent of' an employer." *Id.* at ¶ 14. However, while acknowledging that "our reasoning in this case calls the *Genaro* majority's reasoning into question," *Hauser* took pains to distinguish rather than overrule *Genaro*, finding it to "not qualify as binding precedent on the immunity question in this case" because it "involved *private*-sector supervisors and managers." *Id.* at ¶¶ 16–17 (emphasis in original).

In the few years since *Hauser* was decided, courts have applied its holding to bar individual liability for both private- and public-sector employees. *See Morningstar v. Circleville Fire & EMS Dep't*, No. 2:15-CV-3077, 2018 WL 1365842, at *9 (S.D. Ohio Mar. 16, 2018)

(Marbley, J.); *Gibbs v. Meridian Roofing Corp.*, No. 1:17-CV-245, 2017 WL 6451181, at *5 (S.D. Ohio Dec. 18, 2017) (Black, J.); *Rosecrans v. Vill. of Wellington*, No. 1:15CV0128, 2016 WL 165450, at *5 (N.D. Ohio Jan. 14, 2016); *Longoria v. Autoneum N. Am., Inc.*, No. 3:14CV2648, 2015 WL 6658675, at *5 (N.D. Ohio Oct. 30, 2015). This Court agrees with the *Longoria* court in that it is "inclined to agree with defendants [that] *Genaro* is no longer good law." 2015 WL 6658675, at *5. Accordingly, all claims against the individual defendants wherein they are alleged to have discriminated against Parker as an "employer" under § 4112.02(A) are not viable.

2. **Parker has not alleged material adverse actions taken by any of the individual defendants for purposes of her retaliation claims under § 4112.02(I).**

However, not all of Parker's Chapter 4112 claims involve employer discrimination under § 4112.02(A). Parker also alleges that she was retaliated against for making protected complaints about discrimination and harassment on the basis of her sex and disability. In contrast to § 4112.02(A), which makes it an unlawful discriminatory practice "[f]or *any employer*, because of the . . . sex . . . [or] disability of any person, to discharge without just cause, to refuse to hire, or to otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment" (emphasis added), Parker's retaliation claims are governed by § 4112.02(I), which makes it an unlawful discriminatory practice "[f]or *any person* to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section." (emphasis added).

A defendant therefore need not be an "employer" in order to be subject to liability for discriminatory retaliation under Chapter 4112. *Longoria*, 2015 WL 6658675, at *6. This result is consistent with *Hauser*, in which the Ohio Supreme Court recognized identical language in

§ 4112.02(J) (imposing liability against "any person" who aids and abets any discriminatory practice) as an example of the language the legislature could have used to impose individual liability for discrimination and sexual harassment under § 4112.02(A) had it so chosen. *Hauser*, ¶ 12.

Ernst, Grote, La Joye, and Anspaugh are therefore not improper individual defendants for Parker's retaliation claims *per se*. But in order to survive a motion to dismiss the retaliation claims, Parker must allege retaliatory adverse actions taken by an individual defendant. And this Parker has failed to do. The retaliatory actions she alleges are that (1) "Strawser moved Parker to the work shop" after she reported Jordan's sexual assault (Doc. 10, Am. Compl. ¶ 103); (2) "Strawser demoted Parker from her line truck driver position" and "Strawser placed Kelly in Parker's line truck driver position" (*id.* ¶¶ 129-31); (3) "Strawser terminated Parker for alleged insubordination," even though complying with her supervisor's request would have meant violating Department of Transportation regulations. (*Id.* ¶ 163); and (4) "Parker received unreasonably low performance evaluations and unjustified write ups or corrective actions." (*id.* ¶ 216). For the first three of these alleged retaliatory actions, Parker's Amended Complaint attributes these actions only to "Strawser" as a whole, such that the Court cannot plausibly infer which particular employee was allegedly responsible. (*Id.* ¶¶ 103, 129–31, 163).

As for the negative performance evaluations and unwarranted discipline following her complaints of harassment, Parker attributes these actions to Ernst (*id.* ¶¶ 72–74, 148–54) and Grote (*id.* ¶¶ 110–13). However, Parker does not allege that she suffered any harm from these reviews or write ups. Her demotion and ultimate termination occurred ten to 18 months after each of the negative reviews and write-ups, and she does not allege that either was motivated by Ernst's or Grote's negative reviews or write ups. *See Baker v. City of Toledo, Ohio*, No.

3:05CV7315, 2007 WL 1101254, at *7 (N.D. Ohio Apr. 11, 2007) (finding a negative performance evaluation to not constitute a retaliatory adverse action under Chapter 4112 when "the evaluation, which had no effect on Plaintiff's employment or application for a position with the Domestic Violence Unit, caused Plaintiff little or no actual harm.").

In sum, La Joye and Anspaugh are not alleged to have taken any specific retaliatory actions against Parker, and the alleged retaliatory actions by Ernst and Grote were *de minimis* and not actionable. Parker has therefore failed to state a viable retaliation claim under § 4112.02(I) against any of the individual defendants.

**B.    Parker's gender dysphoria is not a disability under the ADA or Chapter 4112.**

Strawser argues that Parker cannot succeed on any of her disability claims under the ADA or Chapter 4112 because Parker's alleged disability, gender dysphoria, is expressly excluded from the definition of "disability" under both statutes. The ADA and Chapter 4112 each provide that "gender identity disorders not resulting from physical impairments" are excluded from coverage. 42 U.S.C. § 12211(b)(1); O.R.C. § 4112.01(A)(16)(b).

In response, Parker cites an Eastern District of Pennsylvania case in which the court surmised that in enacting the ADA's exclusion for gender identity disorders, Congress was truly concerned with making sure that "*non-disabling* conditions that concern sexual orientation or identity" were not covered. *Blatt v. Cabela's Retail, Inc.*, No. 5:14-CV-04822, 2017 WL 2178123, at *3 (E.D. Pa. May 18, 2017) (emphasis added). Since Blatt alleged she was substantially limited by her gender dysphoria in the major life activities of "interacting with others, reproducing, and social and occupational functioning," the court determined that the plaintiff's gender dysphoria was *disabling*, and therefore Blatt's gender dysphoria was not encompassed by the § 12111(b)(1) exclusion. *Id.* at *4.

12

But this Court can find no support, textual or otherwise, for the *Blatt* court's interpretation. The exclusion plainly applies to all "gender identity disorders not resulting from physical impairments," without any regard to whether the gender identity disorder is disabling. Further, whether a condition is "disabling," according to the *Blatt* court, depends on whether the condition substantially limits one or more major life activities. But limitation of major life activities is a requirement for *all* conditions qualifying as a "disability" under the ADA. 42 U.S.C. § 12101(1). Thus, gender identity disorders that do not substantially limit a major life activity are already excluded from coverage, and an additional exclusion for any non-disabling condition would be superfluous. *See, e.g.*, *Daniel v. Cantrell*, 375 F.3d 377, 383 (6th Cir. 2004) (courts should "avoid interpretations of a statute which would render portions of it superfluous.").

The clear result is that Congress intended to exclude from the ADA's protection both disabling and non-disabling gender identity disorders that do not result from a physical impairment. The majority of federal cases have concluded as much. *See Gulley-Fernandez v. Wisconsin Dep't of Corr.*, No. 15-CV-995, 2015 WL 7777997, at *2 (E.D. Wis. Dec. 1, 2015); *Mitchell v. Wall*, No. 15-CV-108-WMC, 2015 WL 10936775, at *1 (W.D. Wis. Aug. 6, 2015); *Diamond v. Allen*, No. 7:14-CV-124 HL, 2014 WL 6461730, at *4 (M.D. Ga. Nov. 17, 2014); *Kastl v. Maricopa Cty. Cmty. Coll. Dist.*, No. CIV.02-1531PHX-SRB, 2004 WL 2008954, at *4 (D. Ariz. June 3, 2004). And while the Court was unable to locate any cases squarely addressing coverage for gender identity disorders under Chapter 4112, courts have consistently held that Ohio's disability discrimination law "entails the same legal analysis as that under the ADA." *Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431 (6th Cir. 2012). As a result, this

Court's analysis of Parker's ADA claim "also resolves [her] state law discrimination claim." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).

Parker further argues that not all gender identity disorders are excluded by 42 U.S.C. § 12111(1)(b) and R.C. § 4112.01(A)(16)(b)—those "resulting from a physical impairment" may still qualify as a disability. Parker cites a number of medical journal articles reporting that individuals with gender dysphoria exhibit differences in brain structure and physiological responses compared to control groups. (Doc. 27, Pl.'s Resp. at 23 n. 146). Parker concludes that this research proves that gender dysphoria results from physical impairments.

But the Court is limited in its review under Rule 12(b)(6) to Parker's allegations in her Amended Complaint and may not consider outside evidence. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). Nowhere in the Amended Complaint did Parker allege that her gender dysphoria was caused by a physical impairment or that gender dysphoria always results from a physical impairment. Moreover, the Court is not convinced that a mere difference in brain structure or physiology, by itself, is necessarily a "physical impairment"—it may have physical underpinnings in the brain, but not every physical difference between two groups implies that one of the groups is impaired in some way.

The language of the statutes make clear that Congress and Ohio's General Assembly contemplated that some gender identity disorders result from physical impairments and some do not; those legislative bodies chose to protect from disability discrimination only those that do. It was therefore Parker's obligation to allege in her Amended Complaint that her gender dysphoria

is caused by a physical impairment.  Having failed to do so, her disability claims under the ADA and Chapter 4112 are foreclosed.[2]

## C.    Transgender and transitioning status is protected by Title VII and Chapter 4112.

All that remains at this stage are Parker's sex-based claims against Strawser for discrimination, harassment, and retaliation based on her transgender status.  Strawser argues that Parker cannot succeed on any of these claims because transgender individuals are not a protected class under Title VII or Chapter 4112.  In support of this argument, Strawser cites an Eastern District of Michigan case which held that "transgender or transsexual status is currently not a protected class under Title VII."  *E.E.O.C. v. R.G. & G.R. Harris Funeral Homes, Inc.*, 100 F. Supp. 3d 594, 598-99 (E.D. Mich. 2015).  However, this case was recently overturned by the Sixth Circuit, which found that "[d]iscrimination on the basis of transgender and transitioning status is necessarily discrimination on the basis of sex."  *E.E.O.C. v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 571 (6th Cir. 2018).

The Sixth Circuit confirmed that transgender individuals may assert claims arising out of discrimination based on their failure to conform to sex stereotypes, as foreshadowed by *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004) and *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989).  Sex stereotyping claims are well-established under Title VII and there is "no reason to exclude Title VII coverage for non sex-stereotypical behavior simply because the person is a transsexual."  *R.G. & G.R. Harris Funeral Homes*, 884 F.3d at 571 (quoting *Smith*, 378 F.3d at 575).  Indeed, "discrimination against transgender persons necessarily implicates Title VII's proscriptions against sex stereotyping" because "an employer cannot discriminate on the basis of

---

[2] As a result, Parker's Motion to Strike is also moot, because the portions of Defendants' reply briefs to which she objected dealt solely with whether Parker had sufficiently pleaded her "regarded as disabled" claim under the ADA and Chapter 4112.

transgender status without imposing its stereotypical notions of how sexual organs and gender identity ought to align." *Id.* at 576.

But the Sixth Circuit also separately extended Title VII protection to claims arising out of discrimination based solely on the fact that an individual is transgender or transitioning, because "it is analytically impossible to fire an employee based on that employee's status as a transgender person without being motivated, at least in part, by the employee's sex." *Id.* at 575. That is, although claims of discrimination on the basis of transgender or transitioning status may often involve a failure to conform to sex stereotypes, allegations related to sex stereotypes are not necessary to state such a claim.

As a result, all Parker must plead in order to establish her membership in a protected class is that she is transgender. Her Amended Complaint clearly makes this allegation; accordingly, Parker has sufficiently pleaded that she is a member of a protected class under Title VII and Chapter 4112.[3]

**D.     Parker has stated a claim for sex discrimination.**

Title VII makes it an unlawful employment practice for an employer "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Similarly, R.C. § 4112.02(A) makes it an unlawful discriminatory practice "[f]or any employer, because of the . . . sex . . . of any person, to discharge without just cause, to refuse to hire, or to otherwise discriminate against that person with respect to hire, tenure, terms,

---

[3] Just as with the ADA, federal case law applying Title VII is generally applicable to Chapter 4112's prohibitions on sex discrimination. *Hauser*, 140 Ohio St. 3d 268, 2014-Ohio-3636, 272, 17 N.E.3d 554, at ¶ 14; *Birch v. Cuyahoga Cty. Prob. Court*, 392 F.3d 151, 163 (6th Cir. 2004).

conditions, or privileges of employment, or any matter directly or indirectly related to employment."

In order to establish a prima facie case of discrimination on the basis of her transgender status, Parker must prove (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was treated differently from similarly situated individuals outside of his protected class. *Smith*, 378 F.3d at 570. These elements are derived from the burden-shifting framework of *McDonnell Douglas Corp. v. Green* that a plaintiff may use to offer circumstantial evidence of discrimination in the absence of direct evidence. 411 U.S. 792 (1973).

Parker does not appear to allege any direct evidence in her Amended Complaint that her demotion or termination was based on her transgender status, and so it may well be that she ultimately makes use of the *McDonnell Douglas* framework in proving her case. However, the Supreme Court has made it clear that a plaintiff need not plead all the elements of the *McDonnell Douglas* prima facie case in order to survive a motion to dismiss. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement."). Rather, "so long as a complaint provides an adequate factual basis for a Title VII discrimination claim, it satisfies the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)." *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012). Moreover, *Swierkiewicz* remains good law after the Supreme Court's decisions in *Twombly* and *Iqbal. Keys v. Humana, Inc.,* 684 F.3d 605, 609 (6th Cir. 2012).

Parker has satisfied this standard. She alleges that she is transgender and that Strawser treated her less favorably than its non-transgender employees on the basis of her transgender status. In support of these conclusions, she alleges that Strawser disciplined her more harshly

(*e.g.*, for making minor errors in her log book which did not draw discipline for other, non-transgender employees), demoted her from the line truck driver position she held at the time she disclosed her transition in favor of Kelly (a less qualified non-transgender employee), and ultimately terminated her employment for insubordination under circumstances that raise a plausible inference of pretext (because Parker could not have complied with her supervisor's request without violating Department of Transportation regulations). Accepting Parker's allegations as true for the purpose of this motion, she has sufficiently stated a claim for sex discrimination under Title VII and Chapter 4112.

**E.     Parker has stated a claim for sexual harassment.**

The Supreme Court recognized in *Meritor Savings Bank v. Vinson* that a hostile work environment created by harassment on the basis of sex can also constitute sex discrimination under 42 U.S.C. § 2000e-2(a)(1). 477 U.S. 57 (1986). A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). To establish a prima facie case of a hostile work environment, a plaintiff must demonstrate that (1) she is a member of a protected class, (2) she was subjected to harassment, either through words or actions, based on her membership in the protected class, (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008). Strawser challenges Parker's Amended Complaint on the third and fourth elements of her harassment claim.

## 1. Hostile work environment

First, Strawser argues that the facts Parker alleges do not amount to harassment that is sufficiently severe or pervasive to create an abusive working environment. There are no hard and fast rules as to how much harassment is enough harassment to qualify as severe or pervasive. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005). But the Supreme Court "has provided a non-exhaustive list of factors to consider when deciding whether a hostile work environment exists, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Grace*, 521 F.3d at 678 (quoting *Harris,* 510 U.S. at 23).

Courts have found this requirement satisfied where a plaintiff alleged she was "the subject of repeated and unrelenting advances from [her supervisor], in the form of direct verbal requests, sexual innuendo, and unwanted touching." *Heimberger v. Pritzker*, No. 2:12-CV-01064, 2014 WL 1050341, at *12 (S.D. Ohio Mar. 17, 2014) (Marbley, J.). *See also Bradley v. Arwood*, No. 14-CV-12303, 2014 WL 5350833, at *17 (E.D. Mich. Oct. 20, 2014) (hostile work environment sufficiently pleaded by plaintiff alleging "she was repeatedly subjected to some form or type of harassment by her co-workers and supervisors" over a two year period); *Fite v. Comtide Nashville, LLC*, 686 F. Supp. 2d 735, 752 (M.D. Tenn. 2010) (hostile work environment sufficiently pleaded where plaintiffs were "subjected to essentially constant racial harassment, jokes, along with nasty and undermining comments tied to their race" such that a supervisor "chronically treated African–American employees with verbally abusive disrespect."); *McDaniel v. Shulkin*, No. 1:17 CV 91, 2017 WL 4574549, at *4–5 (N.D. Ohio Oct. 13, 2017) (hostile work environment sufficiently pleaded where plaintiff alleged she was subject to unwelcome physical contact and intimidation, offensive verbal comments, workplace sabotage, false accusations of

misconduct, and threats of unwarranted discipline from defendants, based on her gender and race).

In contrast, courts have found this requirement unmet where the offensive conduct "was not a daily or even weekly event." *Kelly v. Senior Centers, Inc.*, 169 F. App'x 423, 429 (6th Cir. 2006). *See also Bourini v. Bridgestone/Firestone N. Am. Tire, LLC*, 136 F. App'x 747, 751 (6th Cir. 2005) (hostile work environment insufficiently pleaded where the only eight incidents alleged were spread out over a period of five years); *Vernon v. AlliedBarton Sec. Servs., LLC*, No. 3:10-00167, 2013 WL 2643808, at *9–10 (M.D. Tenn. June 12, 2013) (hostile work environment insufficiently alleged where a plaintiff was "only able to identify a handful of incidents that occurred over a two month period"); *Collins, v. Potter,* No. 04-2429-D/PH, 2006 WL 8435050, at *4 (W.D. Tenn. Sept. 18, 2006) (allegations that "amount to nothing more than 'teasing', 'offhand comments', 'intermittent gestures', and 'unwelcome staring'" were insufficient to allege a hostile work environment).

Parker's allegations fall somewhere in the middle of this continuum. She alleges that she was "subjected to constant and continuing harassment due to her gender transition"; that Kelly "made repeated derogatory and discriminatory gender, gender identity, and transition comments and jokes"; that after she reported Kelly's harassment to Ernst, "Kelly's sexual harassment of Parker intensified"; that "Strawser's harassment of Parker only intensified in 2013"; that she was sexually assaulted by Jordan, after which her co-workers harassed her for Jordan's termination; that "Ernst stated that he would treat Parker better if she performed sexual favors"; that she suffered "constant harassment and fear of physical abuse"; and that after she returned from suspension, "the harassment . . . did not cease"; (Doc. 10, Am. Compl. ¶¶ 56, 58, 68, 75, 102, 107, 115, 147). Parker alleges that all of this activity occurred between September 2012 (when

she disclosed her transgender and transitioning status to Strawser) and October 2014 (when her employment was terminated).

While Parker's allegations present a closer case than some, the Court concludes that at this early pleading stage, Parker has sufficiently alleged that she suffered a hostile work environment as a result of harassment based on her transgender status.[4]

## 2.      Employer liability

Employers can be liable for the harassment of their employees in two ways: (1) if the harasser is the plaintiff's supervisor, the employer is vicariously liable through principles of agency and respondeat superior; or (2) if the harasser is the plaintiff's co-worker, without supervisory power over the plaintiff, the employer may directly liable if the employer was negligent with respect to the offensive behavior. *Vance v. Ball State Univ.*, 570 U.S. 421, 427– 28 (2013). Strawser argues that none of the individuals who harassed Parker were her supervisor, and that because she has not alleged that Strawser was negligent, she cannot establish Strawser's liability for the harassment.

Strawser is probably correct that none of Parker's alleged harassers qualify as "supervisors" so as to impose vicarious liability on Strawser. According to Parker's Amended Complaint, Kelly was another truck driver like Parker, and she refers to Jordan as "a co-worker." (Doc. 10, ¶ 99). And although Parker describes Ernst as "manager and/or supervisor" and her "immediate supervisor," (*id.* ¶¶ 3, 41), he does not appear to have possessed the powers required to qualify as a "supervisor" for purposes of sexual harassment claims under Title VII. *Vance*,

---

[4] Strawser points out that at least some of Kelly's harassment appears to be directed to his perception of her sexual orientation, *i.e.*, Kelly stated that "Kelly believed that Parker was really a male, who was attracted to other males" and that "Holsinger was a homosexual due to this rooming arrangement [with Parker]." (Doc. 10, Am. Compl. ¶¶ 59, 65). Strawser is correct that the Sixth Circuit's most recent opinion concerning sexual orientation under Title VII held that it did not create a protected class. *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 766 (6th Cir. 2006). However, the Court is satisfied that these comments related at least in part to Parker's transgender status by suggesting that Parker was "really a male," as opposed to her identification as female.

570 U.S. at 431 ("an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.,* to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'") (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

The ability to direct another employee's tasks, without more, is insufficient to impose vicarious liability on the employer. *Vance*, 570 U.S. at 439. While "[e]mployees with such powers are certainly capable of creating intolerable work environments, [ ] so are many other co-workers," and "[n]egligence provides the better framework for evaluating an employer's liability when a harassing employee lacks the power to take tangible employment actions." *Id.* And although Ernst appears to have been responsible for reviewing Parker's logbook and evaluating her performance, Parker does not allege that he took or had the power to take any tangible employment actions against her. Thus, Ernst is considered a co-worker for the purpose of Parker's sexual harassment claim.

Having alleged harassment only by co-workers and not supervisors, Parker must allege that Strawser was negligent in addressing the harassment. Employers are negligent when, despite knowledge on the part of the employer of the harassment, the employer has done nothing to stop it, *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998), or if the employer's response "exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination." *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 873 (6th Cir. 1997). In these circumstances, the combination of knowledge and inaction may be seen as "the employer's

adoption of the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy." *Faragher*, 524 U.S. at 789.

Parker's allegations portray just such an ineffectual and indifferent response to the harassment Parker endured. She reported the harassment to Strawser on multiple occasions, but the harassment either persisted or intensified. (Doc. 10, Am. Compl. ¶¶ 68, 75). When she reached out to La Joye, he expressly told her that there was nothing he could do to curb the harassment and that if she couldn't handle it, she should resign. (*Id.* ¶¶ 114–121). Even after Grote asked her to withdraw her resignation and speak with senior Strawser officers about her experiences, and she was told at that meeting that Strawser would attempt to remedy the harassment, Strawser took no meaningful measures to improve the situation. (*Id.* ¶¶ 124–128). Accepting all of Parker's allegations as true, she has sufficiently pleaded that Strawser was negligent in its response to the harassment reported by Parker. She has therefore sufficiently pleaded a claim for sexual harassment.

**F. Parker has stated a claim for retaliation.**

Title VII makes it an unlawful employment practice "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Similarly, R.C. § 4112.02(I) makes it an unlawful discriminatory practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section."

To establish a prima facie case of retaliation under these provisions, a plaintiff must show that: (1) she engaged in an activity protected by Title VII; (2) the defendant knew she engaged in this protected activity; (3) thereafter, the defendant took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment

action.  *Smith*, 378 F.3d at 570.  Strawser challenges Parker's allegations as to the first and fourth of these elements.

### 1.      Protected activity

First, Parker alleged she engaged in protected activity when she complained to her superiors, on multiple occasions, that she was being harassed by her co-workers because of her transgender status.  Complaints made to superiors are a protected activity under Title VII.  *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012).  Strawser's argument that these complaints are not protected by Title VII rests on its previously-rejected argument that Title VII does not reach discrimination on the basis of transgender status.   And although *R.G. & G.R. Harris Funeral Homes* was decided by the Sixth Circuit only after Parker made her complaints, a plaintiff need only have a good faith belief that the complained-of action violates Title VII in order to invoke its retaliation protections.  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000).  Accordingly, Parker has sufficiently alleged that she engaged in protected activity.

### 2.      Causation

As to the fourth element, Parker expressly alleged that that "Strawser's actions [moving her to the workshop, demoting her, issuing unwarranted discipline, and terminating her employment] were retaliatory in nature based on Parker's opposition to the unlawful discriminatory conduct."  (Doc. 10, Am. Compl. ¶ 193).  Strawser asserts that this type of conclusory allegation is insufficient to satisfy Rule 12(b)(6), and that the only *factual* allegations Parker makes regarding causation are that her protected complaints were made prior to her demotion and termination.  *See Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 525 (6th Cir. 2008) (where some time has elapsed between the protected activity and the adverse action, as opposed to when the adverse action immediately follows the protected activity, "the employee

must couple temporal proximity with other evidence of retaliatory conduct to establish causality.").

While none of the material adverse actions alleged by Parker occurred immediately on the heels of any of her complaints, Parker has alleged other facts that add plausibility to the causation allegation. First, Strawser demoted Parker from her position as line truck driver and replaced her with Kelly, one of Parker's most frequent harassers, about whom Parker had complained to Strawser, and who Parker alleges was unqualified for the position. (Doc. 10, Am. Compl. ¶¶ 131–33). Further, Strawser's stated reason for terminating Parker's employment—insubordination—is inconsistent with Parker's allegations that she could not have complied with her supervisor's request without violating Department of Transportation regulations. (*Id.* ¶¶ 158–62). Considered against the backdrop of Strawser's repeated failure to take any meaningful action to address the harassment complained of by Parker, these allegations are sufficient to raise a plausible inference that Parker's demotion and termination were motivated in part by her protected complaints. She has therefore sufficiently pleaded a claim for retaliation.

## IV. CONCLUSION

For the foregoing reasons, the Motions to Dismiss of Anspaugh, Ernst, Grote, and La Joye (Docs. 19–22) are **GRANTED**. Strawser's Motion to Dismiss (Doc. 18) is **GRANTED IN PART** and **DENIED IN PART**. Parker's claims for disability discrimination under the ADA (Count 7) and Chapter 4112 (Count 8) are **DISMISSED**. Parker's Motion to Strike (Doc. 36) is **DENIED AS MOOT**.

The Clerk shall remove Documents 18–22 and 36 from the Court's pending motions list.

**IT IS SO ORDERED.**

         */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**